AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Mar 28, 2022
OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 3:22 CM 10-MEF
A SAMSUNG GALAXY )
CELLULAR TELEPHONE, BLUE IN )
COLOR )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the ___Western___ District of ___Arkansas___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Controlled Substance Offenses |
| 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:
See attached Affidavit of FBI TFO Cody Middleton.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI TFO Cody Middleton
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/28/22

*Judge's signature*

City and state: Fort Smith, Arkansas

Hon. Mark E. Ford, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

One (1) AT&T cellular telephone, blue in color, with a cracked screen and a SIM card bearing the numbers 8901410427 2941186442, depicted below:





## ATTACHMENT B

1.  All records on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) and 846, including but not limited to:

    a.  Any and all communications to and from the Device involving the trafficking of controlled substances;

    b.  Any and all communications to and from the Device involving Garrett Angel;

    c.  Any and all electronic media, photographs, internet browser history or electronic application use indicative of violations of the above-referenced sections of the United States Code; and

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN AT&T CELLULAR TELEPHONE, BLUE IN COLOR | **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Cody Middleton, Task Force Officer of the Federal Bureau of Investigation (FBI), being duly sworn, depose and state that:

## INTRODUCTION

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been a Task Force Officer of the FBI since September 30, 2020. I have been employed with the 14th Judicial District Drug Task Force since October 15, 2015. In April of 2020, I was promoted to the rank of Chief Investigator. Before my employment with the 14th Judicial District Drug Task Force, I was employed with the Jasper Police Department for 6 years as a Police Officer. In addition, I attended the Black River Technical College Basic Police Training Course (614 hours) in December 2010. In addition, I have over 1,216 hours of Law Enforcement Training.

3. During my employment with the FBI and 14th Judicial District Drug Task Force, I have had formal training and experience in the investigation of controlled substances and I am familiar with the manner in which controlled substances, including marijuana, cocaine, methamphetamine, and other controlled substances, are packaged,

distributed, consumed and how they are identified. I have participated in executing numerous arrests and search warrants for violations involving such substances. In the course of my employment, I have become familiar with the ordinary meaning of controlled substances slang and jargon, and I am familiar with the manners and techniques of traffickers who distribute controlled substances. I have also received training from experienced FBI Special Agents and other narcotics officers in the investigation of major drug traffickers.

4. The statements contained in this Affidavit are based on investigative efforts of this Affiant, other law enforcement officials, and on my experience and background as a Task Force Officer with the FBI and as an investigator with the 14th Judicial District Drug Task Force. This Affidavit is being submitted for the limited purpose to establish probable cause for a search warrant for the search of the AT&T cellular telephone, blue in color, (see Attachment A; "Devices" ) seized and maintained as evidence following the arrest of Garrett Angel by the State of Arkansas 14th Judicial District Drug Task Force, Arkansas Sheriff's Office on August 17, 2021. For a more specific description of the cellular telephone, please refer to Attachment A.

5. Based upon your Affiants knowledge, training, and experience, your Affiant knows that drug traffickers commonly use cellular phones to communicate with their criminal associates. These cell phones contain evidence regarding the dates and times of calls to and from their criminal associates as well as stored information regarding the telephone numbers, names, alias names and saved text messages (both sent and received) to and from their criminal associates. Cellular phones contain video and photographs of

criminal associates, illegal substances, locations and other evidence pertinent to this investigation.

## PROBABLE CAUSE

6. On Tuesday, August 27, 2021, Affiant assisted the State of Arkansas Department of Community Corrections with a home visit and search on parolee Lisa Johnson. Johnson was on active felony supervision with the State of Arkansas and has a search waiver on file with Arkansas Community Corrections.

7. Affiant arrived at Johnson's residence, which is located at 610 West Rush Street in Harrison, Arkansas, which is within the Western District of Arkansas. While searching the home, Garrett Angel was found hiding in the basement of the residence beneath a pile of clothing. Garrett Angel, like Johnson, is on active felony supervision with the State of Arkansas with a search waiver on file.

8. In Angel's possession was a multi-colored bag. A search of the bag revealed four (4) baggies of an off-white, crystal like substance, multiple new and used baggies, and an Arkansas Driver's License belonging to Garrett Angel. The off-white, crystalline substance was later tested with a positive result for the presence of methamphetamine and weighed. The weight of the substance was 32.2 gross grams. The substance is awaiting transport to the DEA laboratory for further confirmatory testing.

9. The basement where Angel was hiding also contained a bedroom, which was searched. Inside the bedroom, a set of black digital scales were discovered, along with the cellular telephone which is the subject of this application. The cellular telephone subject to this application was seized at the time of discovery and has been in secure evidence storage since seizure.

10. Based upon my training, experience, and knowledge of this and similar investigations, I know that the amount of methamphetamine and associated materials found in Angel's constructive possession are indicative of the sale of methamphetamine, and that methamphetamine traffickers frequently utilize cellular telephones to obtain and sell methamphetamine. As such, I believe probable cause to search the cellular telephone described in Attachment A exists for the items described in Attachment B.

## TECHNICAL TERMS

Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined

with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

Based on my training, experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and has internet capabilities. In my training and experience, examining data stored on

devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

**Nature of examination**: Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

**Manner of execution**: Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

WHEREFORE, I believe that in light of the information contained herein, there is probable cause to believe that the device (more particularly described in Attachment A of this affidavit) seized by and in the possession of the FBI contains information and records which

would constitute evidence of violations of 21 U.S.C. § 841(a)(1) and 846, and that there is probable cause for a search warrant authorizing the examination of the Device's described in Attachment A; for the items described in Attachment B.

DATED this 28 day of March, 2022.

_____
Cody Middleton
FBI Task Force Officer

Affidavit subscribed and sworn to before me this 28th day of March, 2022.

_____
Honorable Mark E. Ford
United States Magistrate Judge